1  Sierra Elizabeth (SBN #268133)
   sierra.elizabeth@kirkland.com
2  KIRKLAND & ELLIS LLP
   333 South Hope St
3  Los Angeles, CA 90071
   (213) 680-8400 (t)
4  (213) 680-8500 (f)

5  Garret A. Leach, P.C. (*pro hac vice*)
   gleach@kirkland.com
6  Robin A. McCue (*pro hac vice*)
   robin.mccue@kirkland.com
7  Megan M. New (*pro hac vice*)
   megan.new@kirkland.com
8  KIRKLAND & ELLIS LLP
   300 North LaSalle
9  Chicago, IL 60654
   (312) 862 - 2000 (t)
10

11 *Attorneys for Plaintiff Allstate Insurance*
   *Company*

12 Kevin J. Minnick (SBN # 199916)
   kevin.minnick@skadden.com
13 Lance A. Etcheverry (SBN #269620)
   lance.etcheverry@skadden.com
14 Skadden, Arps, Slate, Meagher & Flom LLP
   300 S Grand Avenue, Suite 3400
15 Los Angeles, CA 90071-3144
   213-687 5000
16

17 *Attorneys for Defendants*

18               **UNITED STATES DISTRICT COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
19

20 ALLSTATE INSURANCE              )   CASE NO. 2:16-cv-06108-SJO
   COMPANY, an Illinois insurance  )   (AGRx)
21 company,                        )
                                   )
22         Plaintiff,              )   **STIPULATED ORDER**
                                   )   **GOVERNING DISCOVERY OF**
23      - vs -                     )   **ELECTRONICALLY STORED**
                                   )   **INFORMATION**
24 KIA MOTORS AMERICA, INC., a     )
   California corporation, and KIA )   Complaint Filed Date:  August 22,
25 MOTORS CORPORATION, a           )   2016
   foreign corporation,            )
26                                 )   Hon. S. James Otero
         Defendants.               )   Hon. Alicia G. Rosenberg
27 ─────────────────────────────── )
28

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

This order regarding the production of information from electronic sources and/or in electronic form ("ESI Agreement") is entered into with respect to and by all parties to the above-captioned matter (the "Action").

1.     This ESI Agreement shall govern the handling of electronically stored information ("ESI") in connection with discovery in the Action.  It shall also govern the handling of electronic copies of documents stored in paper or other hard-copy form that are produced in connection with discovery in the Action.   This ESI Agreement shall be enforced as an order of the Court.

2.     Because discovery and review of ESI can involve greater expense than discovery of paper documents, it is in the interest of justice that the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) be applied in this case.

3.     The production of electronic documents shall be made in a single-page Tagged Image File Format ("TIFFs") using a lossless compression technique (*e.g.*, Group IV or LZW compression), provided, however, that audio and video files and spreadsheets (or other forms of tabular data, including CSV or XML files) shall be produced in native file format pursuant to the provisions of paragraph 7.

4.     TIFFs shall be produced with unitization files ("load files") in a format suitable for loading into a Relativity-compatible litigation support review database. The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a "parent-child" relationship exists between the documents) shall be maintained through the conversion process from native format to TIFF, provided however, that the parties shall only be required to present one level of parent-child relationship.  Document images generated from attachments to e-mails stored in native format shall be produced contemporaneously and sequentially immediately after the parent e-mail.

5. TIFFs shall also be produced with a load file that delineates logical document boundaries, together with the associated Optical Character Recognition ("OCR") file in its "as is" condition (in other words, there shall be no obligation to ensure that the OCR file has recognized each character contained in the TIFF image with precision or exactness).

6. If producing files in Group 4 compression single-page TIFF format would distort the presentation of the underlying document or would cause the document's information to be improperly displayed, a party shall instead produce the document in its native file format pursuant to the provisions of paragraph 7. Moreover, each party reserves the right to make reasonable requests for specified files in native file format.

7. In the event native format documents are produced, in order to preserve the integrity of those native format documents, no unique page identifier or Bates label ("Control Number"), confidentiality legend, or internal tracking number should be added to the content of the native document. Instead, a new field shall be added to the .dat file entitled "Control Number," which will be populated with the corresponding document number and confidentiality designation. When a producing party produces a document in native format, the producing party shall include in the production a placeholder page that indicates that the document has been "Produced in Native Format" or other language indicating the same, or shall otherwise indicate the document numbers of documents produced in native format. The placeholder page must contain the Control Number and confidentiality legend (where applicable). The placeholder page must follow sequentially in the order the document would otherwise have been produced within a family.

8. For ESI, each party shall produce with each production the following fields of metadata, where available: beginning document control number (BEGDOC); ending control number (ENDDOC); beginning number for document family

(BEGATTACH); ending number for family (ENDATTACH); custodian; document title; subject line for e-mails; attachment(s); parent/children control number range; document date; date sent for e-mails; date created; date last modified; document author (for non-emails); sender ("from" line); recipients (all "to"s); copyees (all "cc"s) for e-mail; blind copyees (all "bcc"s); file name; file size; file path; MD5.Hash. The parties recognize that a reasonable basis for objecting to the production of metadata exists if it can be shown that such production would cause undue burden on the producing party.

9. For electronic copies of documents stored in paper or other hard-copy forms, each party shall produce with each production the following fields of metadata, where available: beginning document control number (BEGDOC); ending control number (ENDDOC); beginning number for document family (BEGATTACH); ending number for family (ENDATTACH); custodian; and parent/children control number range.

10. In the event a document is redacted, the producing party shall provide partial OCR text to reflect the unredacted portions of the document. If the redaction of a document required redaction of certain metadata (*e.g.*, the subject line of an e-mail contains privileged information), that information will be changed to reflect the redaction but otherwise will be provided in full. The failure to withhold extracted text for a redacted document or its associated metadata by a producing party shall not be deemed a waiver of any privilege associated with that document.

11. A producing party shall produce documents on a CD-ROM, DVD, external hard drive, flash drive, or such other readily accessible computer or electronic media as the parties may hereafter agree upon, or via a Secure File Transfer Protocol or other file sharing software. Information that shall be identified on the face of the production media, or in a cover e-mail or letter, shall include: (1) the case number for this case; (2) the producing party's name; (3) the production date; (4) the Control

Number range(s) of the documents; and (5) the highest applicable confidentiality designation pursuant to any protective order entered by the Court or any confidentiality agreement entered into by the parties in this case, if the production contains protected information.

12.     Documents may be produced in black and white in the first instance.  If a produced document contained color, and that color is relevant to the Action, or is reasonably necessary to understand the meaning, context, and/or content of the document, the producing party shall honor reasonable requests for the production of a full-color image of the document.

13.     The parties agree that the following categories of ESI are generally not discoverable in most cases and, if any party intends to request the preservation or production of these categories, then that intention should be discussed as soon after the commencement of discovery as practicable and that the party requesting discovery from such sources shall either pay the cost associated with such, or demonstrate why the responding party should be required to pay the associated cost:

      (a) "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

      (b) random access memory (RAM) or other ephemeral data;

      (c) on-line access data such as temporary internet files, history, cache, cookies, etc.;

      (d) data in metadata fields that are frequently updated automatically, such as last-opened dates;

      (e) voicemail messages other than voicemails recorded or transcribed through email;

      (f) text messages;

      (g) backup data that is substantially duplicative of data that is more accessible elsewhere; and

(f) other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

14.    The parties agree that, if there is a dispute concerning the scope of a party's preservation and/or production efforts with respect to ESI, the parties' counsel shall first meet and confer toward fully explaining their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(1), and toward resolving the dispute.

15.    Each requesting party shall limit its email production requests to a total of ten custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

16.    Each requesting party shall limit its email production requests to a total of ten search terms per specific custodian, plus a total of ten search terms applicable to all requests per party.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for up to five additional search terms per custodian, and five search terms applicable to all requests, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.

A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. The requesting party shall provide a translation of any search terms that it would like applied in any language other than English. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

17. Entering into, agreeing to, or otherwise complying with the terms of this ESI Agreement shall not:

(a) operate as an admission by any party that any particular electronic source is reasonably accessible and/or contains information or documents relevant to this Action;

(b) operate as an admission by any party that another party's search, collection, review and production efforts have been appropriately, effectively, and/or adequately performed;

(c) prejudice in any way the rights of any party to object to the method or effectiveness of another party's search, collection, review and production efforts upon a showing of good cause;

(d) prevent the parties from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular source, type, or custodian of ESI; and/or

(e) constitute a waiver of any privilege or protection otherwise applicable to ESI.

18.     It is the present intention of the parties that the provisions of this ESI Agreement shall supplement and be interpreted consistent with any Confidentiality Agreements and/or Protective Orders entered into (or to be entered into) in this proceeding.  Nevertheless, each of the parties shall be entitled to seek modification of this ESI Agreement by negotiation or application to the Court on notice to the other parties and for good cause.

19.     This ESI Agreement shall remain in full force and effect until modified, superseded or terminated on the record, by agreement of the parties, or by an order of the Court.

*     *     *

/s/     Kevin J. Minnick
_____

Lance A. Etcheverry (SBN # 199916)
lance.etcheverry@skadden.com
Kevin J. Minnick (SBN # 269620)
kevin.minnick@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
300 S Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144
213-687 5000

/s/     Sierra Elizabeth
_____

Sierra Elizabeth (SBN #268133)
sierra.elizabeth@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St
Los Angeles, CA 90071
(213) 680-8400
(213) 680-8500

Garret A. Leach, P.C. (*pro hac vice*)
gleach@kirkland.com
Robin A. McCue (*pro hac vice*)
robin.mccue@kirkland.com
Megan M. New (*pro hac vice*)
megan.new@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

IT IS SO ORDERED.

DATED: December 5, 2016

*Alicia G. Rosenberg*
_____
Honorable Alicia G. Rosenberg
United States Magistrate Judge

## **Local Rule 5-4.3.4 Statement**

I, Sierra Elizabeth, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  December 5, 2016

*/s/     Sierra Elizabeth*

Sierra Elizabeth (SBN #268133)
sierra.elizabeth@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St
Los Angeles, CA 90071
(213) 680-8400
(213) 680-8500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

<em>/s/  Sierra Elizabeth</em>