# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

**CASE NO.:** <u>CV 16-6108 SJO (AGRx)</u>    **DATE:** <u>December 22, 2017</u>

**TITLE:**    <u>Allstate Insurance Company v. Kia Motors America, Inc. et al.</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                         Not Present
Courtroom Clerk                          Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                              Not Present

========================================================================
**PROCEEDINGS (in chambers): FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This action for trademark infringement was filed by Allstate Insurance Company ("Allstate" or "Plaintiff") against Kia Motors America, Inc. ("KMA") and Kia Motors Corporation ("KMC") (collectively, "Kia" or "Defendants"). On August 15, 2016, Allstate filed a complaint with this Court. (Complaint, ECF No. 4.) A trial commenced on November 7, 2017 with an advisory jury. On November 9, 2017, the advisory jury reached a verdict in favor of Plaintiff on the issue of likelihood of confusion. (Minutes of Jury Trial, ECF No. 216.) The trial continued without a jury on the issue of whether a permanent injunction should issue. (Minutes of Trial, ECF No. 217.) The Court took the issue under submission and now issues the following Findings of Fact and Conclusions of Law finding that Allstate has not established that Kia's Drive Wise creates a likelihood of confusion and denying Plaintiff's request for a permanent injunction. Pursuant to Federal Rule of Civil Procedure 52(a), the Court enters these Findings of Fact and Conclusions of Law. If any Finding of Fact is in truth a Conclusion of Law or if any Conclusion of Law is in truth a Finding of Fact, it is so deemed.

## <u>FINDINGS OF FACT</u>

I.    <u>The Parties</u>

1.  Allstate Insurance Company ("Allstate") is an insurance company organized and existing under the laws of the state of Illinois, with its principal place of business in Northbrook, Illinois. (Joint Stipulated Facts, ECF No. 203-2 ("Stipulation of Facts"), No. 1.)

2.  Defendant Kia Motors America, Inc. ("KMA) is a corporation organized and existing under the laws of the state of California, with its principal place of business in California (Stipulation of Facts, No. 2.) KMA is a subsidiary of Defendant Kia Motors Corporation ("KMC"), and KMA is the sole authorized distributor in the United States of Kia-branded cars to a network of Kia dealers throughout the United States (Stipulation of Facts, Nos. 3-4.)

**CASE NO.:** <u>CV 16-6108 SJO (AGRx)</u>          **DATE:** <u>December 22, 2017</u>

3.   Defendant Kia Motors Corporation is an automobile manufacturing company.  Its principal place of business in Seoul, South Korea (Stipulation of Facts, No. 5.)

II.   <u>Validity and Ownership of Allstate's Trademark</u>

4.   Allstate owns United States Trademark Registration No. 3,946,209 for DRIVEWISE® (the "Drivewise Mark"). (Stipulation of Facts, No. 6.)  The date of first use for the Drivewise Mark is December 6, 2010.  (Stipulation of Facts, No. 9.)  This registration became incontestable on April 14, 2016. (Stipulation of Facts, No. 8.)

5.   Allstate owns United States Trademark Registration Nos. 5,140,358 and 5,140,359 for the Drivewise Mark. (Stipulation of Facts, Nos. 10,13.)  The date of first use for this mark is December 6, 2010 for International Classes 35, 36, and 42, and December 19, 2012 for International Class 9. (Stipulation of Facts, Nos. 12,15.)

6.   Kia has not received a trademark registration for "Drive Wise" from the USPTO. (Stipulation of Facts, No. 29.)  Nonetheless, KMC filed United States Trademark Application Serial No. 86/873,294 for "Drive Wise" on January 12, 2016 for International Class 12.  On September 27, 2017, the United States Patent and Trademark Office issued a "Notice of Publication."  The "Notice of Publication" states, "[t]he mark of the application identified appears to be entitled to registration.  The mark will . . . be published in the *Official Gazette* on [October 17, 2017] for the purpose of opposition by any person who believes he will be damaged by the registration of the mark."  Allstate has indicated it intends to oppose the registration of the mark.  (Stipulation of Facts, No. 29.)

7.   On January 12, 2016, KMC filed an application to register "Drive Wise" as a stylized design mark in International Class 12, in connection with "drive assist and safety device and system." (Stipulation of Facts, No. 39.)  It later filed United States Trademark Application Serial No. 87/122,948 for "Kia Drive Wise" on August 1, 2016 for International Class 12.  The USPTO has not approved this application. (Stipulation of Facts, No. 31.)

III.   <u>Likelihood of Confusion</u>

   A.   <u>Strength of the Mark</u>

8.   Allstate has used its Drivewise Mark continuously since launching the Drivewise Program in 2010, and some form of Allstate's Drivewise Program has been available since 2010. (Stipulation of Facts, No. 23.)  The Program became available in all fifty states and the District of Columbia in 2016. (Stipulation of Facts, No. 19.)  There are currently 1.1 million participants in the Program, however Allstate has not defined "participation."  (Stipulation of Facts, No. 20.)  58 percent of new Allstate customers indicate an interest in Drivewise and 22 percent participate.  (Testimony of Ginger Purgatorio, ECF No. 205, ("Purgatorio Testimony, Day I") 90:1-6.)  Again, however, Allstate has not elucidated the methodology used to arrive at these numbers.

**CASE NO.: CV 16-6108 SJO (AGRx)**     **DATE: December 22, 2017**

9.  Both the On Board Diagnostics II ("OBD-II") device and the Drivewise Mobile App prominently feature the Drivewise Mark.  (Stipulation of Facts, No. 24.)  Each OBD-II device costs Allstate between $85-100.  (Purgatorio Testimony, Day I 63:13-17.)

10. Allstate claims to have spent more than $400 million developing and operating the Drivewise Program in the United States, but no corroborative documentation or other foundation was offered to support its expenditure claims.  (Testimony of Ginger Purgatorio, ECF No. 207 ("Purgatorio Testimony, Day II") 46:5-12; Closing Arguments, ECF No. 213 90:13-24.)  Allstate also claims to have invested a further $47 million in paid media for the Drivewise program, but once again did not offer corroborative evidence to shore up this amount. (Testimony of Lisa Jillson, ECF No. 207 ("Jillson Testimony") 69:20-23.)  This includes both local and national advertising campaigns.  (Purgatorio Testimony, Day I 67:13-15.)  Drivewise does not have a separate marketing budget, but pulls from the overall Allstate marketing budget.  (Jillson Testimony 96:15-19.)

11. Allstate's insurance products, including its Drivewise Program, are sold nationally by its more than 9,000 agency owners and 20,000 support staff.  (Jillson Testimony 71:22-72:1.)  Allstate prepares at its own expense promotional materials for these agents, including brochures, online ads and banners, postcards, laminates, and posters, bearing the Drivewise Mark, the cost of which is not included in the "paid media" budget.  (Stipulation of Facts, No. 28.)

12. Allstate's Drivewise Program has received industry awards, including recognition in a Fortune magazine list of the top 50 most innovative companies.  The accompanying article uses Drivewise as an example of Allstate's innovation.  (Jillson Testimony 77:13-23.)

13. Despite having the means and ability, Allstate has not conducted any consumer research to test the strength or value of its Drivewise trademark.  (Jillson Testimony 88:9-19.)

B. Similarity of the Marks

14. "Drivewise" and "Drive Wise" are pronounced identically.  (Testimony of Hui Choi, ECF No. 212, ("Choi Testimony") 22:17-22.)  Allstate's Drivewise Program is promoted, in significant part, through word of mouth. (Jillson Testimony 76:7-14.)

15. The appearance of the word marks is nearly identical, the only distinctions being a space between "drive" and "wise" and a capitalized "w" in Kia's mark.

16. Kia's "Drive Wise" does not always appear as a logo, but appears in a non-stylized manner throughout Kia's marketing materials.  (*See e.g.*, PX-24; Trial Exh. 519.)

17. Allstate's logo mark appears on a single line and typically appears with a blue and white color scheme.  (PX-229).  Kia's logo mark appear on two lines with a red, black, and grey color scheme.  (PX-80, at 5327.)



(*See e.g.*, PX-343.)



(*See e.g.,* PX-181.)

18. Both the OBD-II and the Drivewise Mobile App use Allstate's house mark[1], and the App is also branded with Allstate's "good hands" logo.  (Stipulation of Facts, No. 25; *see also* PX-328.)  The mobile phone app became available in 2014, but starting in mid-May 2017, the functions of the Drivewise mobile app have been merged into the general "Allstate Mobile" app, and the Drivewise stand-alone app is being phased out.  (Stipulation of Facts, No. 26.)

19. While Kia's "Drive Wise" mark is often accompanied by the Kia house mark, there are numerous instances where it is not, particularly when used as a word mark.  (*See e.g.*, PX-80, at 5329.)

---

[1] A house mark (or housemark) is a trademark associated with the corporate brand name (i.e., "Allstate" or "Kia")—in contrast to sub-brands such as the marks at issue in this case.

**CASE NO.:** <u>CV 16-6108 SJO (AGRx)</u>     **DATE:** <u>December 22, 2017</u>



(*See e.g.*, Trial Exh. 519.)

20. Kia's stated purpose in selecting "Drive Wise" was to convey the technology's ability to assist with safe driving.  (Choi Testimony 22:7-16.)

### C.   Proximity and Relatedness of Goods or Services

21. KMA uses the sub-brand "Drive Wise" to market a suite of Advanced Driver Assistance Systems ("ADAS") features in Kia vehicles that are available in the United States. (Stipulation of Facts, No. 34.)  ADAS features are technologically advanced vehicle components that directly interact and/or control the physical operation of the vehicle.  (Joint Statement of the Case, ECF No. 141.)  The ADAS features currently available in the United States under the Drive Wise name are: (a) Smart Blind Spot Detection; (b) Blind Spot Detection; (c) Rear Cross Traffic Alert; (d) Lane Keeping Assist System; (e) Lane Departure Warning System; (f) Autonomous Emergency Braking; (g) Forward Collision Warning System; (h) Parking Assist System; (i) Advanced Smart Cruise Control; (j) Smart Cruise Control; (k) Surround View Monitor; (l) Dynamic Bending Lights; (m) High Beam Assist  (Stipulation of Facts, No. 42; *see also* PX-82, at 5184.)  Allstate's Drivewise Program does not offer any of these features.  (Purgatorio Testimony, Day II 32:3-15.)

22. Kia does not sell a vehicle model called "Drive Wise." (Stipulation of Facts, No. 46.) Nonetheless, the ADAS features identified above are all installed within, or interact with, the physical operation of the vehicle. (Stipulation of Facts, No. 44.)  They are offered as an optional add-on package to Kia's automobiles and are not available for purchase on their own, nor can they be added to existing vehicles.  (Testimony of Ralph Tjoa, ECF No. 212 ("Tjoa Testimony") 51:12-19.)

23. It is uncontested that the parties are not in a related business—Kia does not sell or market insurance and Allstate does not sell or market vehicles. (Stipulation of Facts, No. 21.)

24. There is no Allstate insurance policy offered or sold under the name Drivewise, however the Drivewise Program is a complement to Allstate's existing insurance products and enables "usage-based insurance," which permits insurers to lower or raise insurance rates based on driving performance and risk profile. (Stipulation of Facts, No. 22; Jillson Testimony 84:22-86:2; Jillson Testimony 90:1-91:12; Purgatorio Testimony, Day II 40:9-18.)  Allstate's

Drivewise Program is optional, free of charge, and available to both Allstate policyholders and non-Allstate policyholders. (Purgatorio Testimony, Day I 61:10-22.)

25. There is no way to purchase Kia's ADAS features without purchasing a Kia vehicle. (Tjoa Testimony 51:12-19.) The price range for Kia's vehicles is approximately between $15,000 and $50,000. (Tjoa Testimony 59:13-15.) The price of the ADAS features sold under the Drive Wise name adds between $1,000 and $3,000 to the price of the car. (Tjoa Testimony 59:16-60:6.)

26. Allstate's Drivewise system consists of a small device which is plugged into a car's OBD-II port and taps into the existing computer and accelerometer found in modern vehicles.[2] (Purgatorio Testimony, Day I 70:16-25.) The Program also utilizes a mobile application, released in 2014, to enable realtime alerts and a feature that automatically replies to text messages and informs the sender that the customer is currently driving and unable to respond. (Purgatorio Testimony, Day I 71:15-75:2.) In 2017, the Drivewise mobile application was merged with the flagship Allstate mobile application and no longer exists as a standalone application. (Stipulation of Facts No. 26.)

27. The features currently offered through the Drivewise Program are: (a) realtime speeding and braking alerts, (b) vehicle diagnostics and maintenance reminder, (c) post-trip feedback, and (d) reports on driving trends so a user can monitor her behavior over time. (Purgatorio Testimony, Day I 61:25-62:5.) Kia's Drive Wise does not offer any of these features. (Tjoa Testimony 51:22-53:15.)

28. Kia's product consists partially of a system of sensors and cameras placed around the vehicle to detect and analyze road conditions. (Tjoa Testimony 47:20-51:11.) Allstate's hardware does not itself contain any sensors, but uses the car's OBD-II port to tap into the existing accelerometer. (Purgatorio Testimony, Day II 34:20-35:10; Purgatorio Testimony, Day I 70:16-25.)

29. Allstate's Drivewise mark is registered in International Classes 9, 35, 36, and 42. (Stipulation of Facts Nos. 12,15.) Kia's trademark applications seek to register its "Drive Wise" mark in International Class 12. (Stipulation of Facts Nos. 30, 31.)

30. International Class 9 covers scientific, nautical, surveying, electric, photographic, cinematographer, optical, weighing, measuring, signaling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus. (Request for Judicial Notice ("RJN") Exh. 3, ECF NO. 201-4.)

---

[2] The Allstate OBD-II device is depicted on Page 4 of this order.

31. International Class 12 covers vehicles; apparatus for locomotion by land, air or water. (RJN, Exh. 3.)

32. International Class 35 covers advertising; business management; business administration; office functions.  (RJN, Exh. 3.)

33. International Class 36 covers insurance; financial affairs; monetary affairs; real estate affairs.  (RJN Exh. 3.)

34. Allstate's United States Trademark Registration No. 3,946,209 for the Drivewise Mark covers "insurance services, namely, underwriting in the fields of property and casualty, utilizing telematics technology, telematics apparatus, namely, wireless devices that provide telematics monitoring services. (Stipulation of Facts, No. 7.)

35. Allstate's United States Trademark Registration Nos. 5,140,358 and 5,140,359 for the Drivewise Mark cover "[s]oftware for monitoring a driver's mileage, speed, driving time, driving hour, brake activity, and other driving habits; Software for providing driver scores, feedback, challenges, parking reminders, and other information related to driving to users; software for providing rewards points, cash rewards, discounts, and other rewards to users; software for providing information related to car maintenance and mechanical repair services and providers; software for providing roadside assistance information; software for sending and receiving electronic messages. Providing incentive award programs for customers through the distribution of discounts and/or purchase points for the purpose of promoting and rewarding loyalty; data compiling and analyzing in the fields of insurance and driving data. Insurance carrier services; Consulting and information concerning insurance; Insurance premium rate computing; Providing information on insurance matters. Providing temporary use of non-downloadable Internet-based software for monitoring a driver's mileage, speed, driving time, driving hour, brake activity, and other driving habits; providing temporary use of nondownloadable Internet-based software for providing driver scores, feedback, and other information related to driving to users; providing temporary use of non-downloadable Internet-based software for providing rewards points, cash rewards and discounts to users; providing temporary use of non-downloadable Internet-based software for providing roadside assistance information." (Stipulation of Facts, No. 11,14.)

36. KMC's trademark application Serial no. 86/974,294 covers "Drive assist and safety system for vehicles primarily comprised of forward collision warning system that is mainly comprised of electric sensors to detect a vehicle in front, a warning alarm and electric switches, and an autonomous emergency brake; Drive assist and safety system for vehicles primarily comprised of backward collision warning system that is mainly comprised of electric sensors to detect a vehicle in back, a warning alarm and electric switches; Drive assist and safety system for vehicles primarily comprised of a lane departure warning system that is mainly comprised of electric sensors to detect a vehicle in the adjacent lane, a warning alarm and electric switches; Drive assist and safety system for vehicles primarily comprised of lane keep assist system that is mainly comprised of electric sensors to detect a vehicle in the adjacent lane, a warning alarm and electric switches; Drive assist and safety system for

vehicles primarily comprised of a blind spot detection system that is mainly comprised of electric sensors to detect a vehicle in front, in the back or in the adjacent lane, a warning alarm and electric switches; automobile chassis, automobile rigid chassis; parking assist device and system, namely, smart parking assist system primarily comprised of parking sensors, sold as a component of power steering systems for land vehicles; forward-backward parking sensor sold as a component of power steering systems for land vehicles; automobile bodies; structural parts and fittings for automobiles."  (Stipulation of Facts, No. 30.)

37. Kia's system has numerous features that exert active control over the vehicle, for instance braking the car or altering its trajectory.  (Tjoa Testimony 47:20-51:11.)  Allstate's Drivewise system is primarily passive, collecting and storing data for later review without actively controlling the vehicle.  (Purgatorio Testimony, Day II 34:20-35:10.)

       D.  <u>Intent in Selecting the Marks</u>

38. Prior to launching "Drive Wise" in the United States, Kia was aware of Allstate's registration and use of the Drivewise Mark. (Stipulation of Facts, No. 35.)

39. In October 2015, KMC's Brand Strategy team identified five potential names for its ADAS features, including "Drive Wise," as part of a third round of potential naming options. (Stipulation of Facts, No. 36.)  At this time, Mr. Choi was not aware of Allstate or Allstate's use of "Drivewise" in the United States.  (Choi Testimony 14:15-20.)

40. Kia sells its automobiles in more than 150 countries and tries to use the same marks worldwide.  (Choi Testimony 8:4-6.)  In order to appeal to a broader consumer base, Kia requires that its marks use the Latin alphabet.  (Choi Testimony 8:17-22.)  It solicits input from its employees in various countries to ensure that the chosen mark is not profane, does not have an improper meaning in the language of any of its consumers, and is able to be trademarked.  (Choi Testimony 8:23-9:7.)  It was during this process that KMC first learned of Allstate's use of the Drivewise name.  (Choi Testimony 15:12-16:12.)

41. On October 14, 2015, KMA employee Min Woo Park informed KMC employee Hui Young Choi that Allstate was using the Drivewise Mark, stating that "DriveWise is owned by Allstate Insurance."  (PX-11.)  Thereafter, Mr. Choi used the online service TMView to search for Allstate's Drivewise Mark and discovered the trademark classes in which it is registered, noting that it was not registered in International Class 12.  (Stipulation of Facts, No. 37.)  He was made aware at that time that Allstate's mark was registered in International Class 9.  (Choi Testimony 29:17-21.)  He visited the Allstate website and concluded that the Drivewise Program did not offer ADAS features.  (Choi Testimony 17:8-21.)

42. Kia had decided not to pursue marks that were registered in International Class 12. (Choi Testimony 12:21-13:18.)  Nonetheless, a Kia employee stated that KMC does not always follow the recommendations of the legal team and is willing to move forward with a mark without legal clearance when it is a brand name that is "of a very high preference among the employees."  (Deposition Testimony of Hye Lee 37:17-38:12, PX-352)

43. Hui Young Choi did not bring the existence of Allstate's Drivewise mark to the attention of Kia's legal counsel, however he did request that Kia's legal department perform its own independent analysis of the trademark landscape surrounding "Drive Wise." (Choi Testimony, 19:8-16.)  The report generated by the legal department was focused primarily on trademarks registered in International Class 12.  (PX-85; Choi Testimony 18:2-17.)  Mr. Choi discussed with attorneys that it may be difficult to use the Drive Wise name in the United States.  (Choi Testimony 35:2-20.)

44. On October 23, 2015, KMC decided to use the Drivewise name for its ADAS product globally, including in the United States. (Stipulation of Facts, No. 38.)

### E.  Evidence of Actual Confusion

45. Allstate is not aware of any actual confusion between Allstate's Drivewise and Kia's Drive Wise.  (Purgatorio Testimony, Day II 43:25-44:2.)  Despite having the means and ability, it has not commissioned any studies or surveys to gauge the likelihood of consumer confusion. (Purgatorio Testimony, Day II 41:14-17; Purgatorio Testimony, Day II 51:16-25.)

46. There are 27 Kia dealerships in the United States where Allstate has agent offices. (Stipulation of Facts, No. 54.)  Allstate made no attempt to gauge consumer confusion in these dealerships.  (Purgatorio Testimony, Day II 41:9-13.)

47. Kia has sold cars with Drive Wise features since at least January 2017.  (Purgatorio Testimony, Day II 41:18-23.)  It first began using the Drive Wise name in its marketing materials in March 2016.  (Stipulation of Facts, Nos. 47, 50.)  At the time of trial, the Drivewise and Drive Wise marks had been used simultaneously for more than a year and a half.

### F.  Marketing Channels Used

48. Allstate utilizes three types of marketing:  (a) paid media, (b) owned media, and (c) earned media.  (Jillson Testimony 61:23-62:3.)  Paid media is advertising for which a company has to pay to get its message to consumers.  (Jillson Testimony 62:4-12.)  Owned media is advertising that is done directly by the company itself, through the use of brochures or posters in its own business, or through the use of the company's website.  (Jillson Testimony 70:3-8.)  Earned media is recognition in the press and is ordinarily not directly purchased by the company.  (Jillson Testimony 76:18-77:1.)

49. Allstate's primary method of selling its services, including Drivewise, is through its approximately 9,000 exclusive agents and 20,000 licensed sales producers. (Stipulation of Facts, No. 27.)  Allstate made no attempt to inquire from any of these owner agents any instances of confusion.[3]

---

[3] The Court reached this conclusion because no evidence to the contrary was offered.

**CASE NO.:  CV 16-6108 SJO (AGRx)**          **DATE:  December 22, 2017**


50. Allstate prepares promotional materials for Allstate agents, including brochures, online ads and banners, postcards, laminates, and posters, bearing the Drivewise Mark. (Stipulation of Facts, No. 28.)

51. To date, Defendants have marketed their ADAS features in the United States using the kia.com website and product brochures available at Kia dealerships. (Stipulation of Facts, No. 53.)

52. KMA used the Drive Wise name on kia.com from March 2016 to June 2016 in connection with the Cadenza.  The Cadenza was not available for sale until the second half of 2016.  (Stipulation of Facts, No. 47.)

53. In November 2016, KMA began using the "Drive Wise" name on the kia.com website in connection with the 2017 Kia Niro, and that use is ongoing. (Stipulation of Facts, No. 48.)

54. KMA began selling the Kia Niro in dealerships in January 2017.  In January 2015, KMA began using the "Drive Wise" name in product brochures distributed to dealerships for the Kia Niro.  The Niro was the first vehicle that was available for sale at the same time that Kia used the "Drive Wise" name to promote it. (Stipulation of Facts, No. 49.)

55. In late May 2016, KMA began using the "Drive Wise" name in product brochures distributed to dealerships for the 2018 Sorento. (Stipulation of Facts, No. 50.)

56. In early June 2017, KMA began using the "Drive Wise" name in product brochures distributed to dealerships for the 2018 Sportage.  (Stipulation of Facts, No. 51.)

57. When KMA distributes product brochures to its dealerships in the United States, it generally sends the brochures to all such dealerships without exception. (Stipulation of Facts, No. 52.)  There are 27 Kia dealerships in the United States where Allstate has agent offices. (Stipulation of Facts, No. 54.)

G.  Likelihood of Expansion of Product Lines

58. Allstate's Drivewise Program and the features it offers have evolved steadily since the program's introduction.  (Purgatorio Testimony, Day I 68:24-69:6.)

59. Allstate has established concrete plans to expand the Drivewise brand to include several new features: ████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████████████████████



H. <u>Type of Goods and Degree of Care Exercised</u>

63. Defendants' ADAS features that are marketed in the United States under the "Drive Wise" name are available only by purchasing a Kia vehicle. There is no way to purchase the ADAS features without purchasing a Kia vehicle. (Stipulation of Facts, No. 45.)

64. Kia does not sell a vehicle model called "Drive Wise." (Stipulation of Facts, No. 46.) Kia's marketing campaigns are centered around the vehicles themselves and not around any specific sub-component. (Deposition Testimony of David Schoonover 36:8-21, PX-355.)

65. The price range for Kia's vehicles is approximately between $15,000 and $50,000. (Tjoa Testimony 59:13-15.) The price of the ADAS features sold under the Drive Wise name adds between $1,000 and $3,000 to the price of the car. (Tjoa Testimony 59:16-60:6.)

66. Allstate's Drivewise Program is free and available to both Allstate policyholders and non-Allstate policyholders. (Purgatorio Testimony, Day I 61:19-22.) Both the OBD-II device and the Allstate App are provided to consumers free of charge. (Purgatorio Testimony, Day II 34:3-13; Purgatorio Testimony, Day II 46:13:47:19; Purgatorio Testimony, Day I 63:13-21.)

IV.     Irreparable Harm

67. Allstate's expert witness, Dr. Gregory Carpenter, opines as follows: "For Allstate, Drivewise is a valuable brand, built through careful management and the investment of substantial resources.  As a sub-brand, the Drivewise brand enhances the value of the Allstate brand, affecting the entire portfolio of products and services sold under the Allstate brand.  The use by Kia of Drive Wise will reduce the distinctiveness of Drivewise, the effectiveness of Drivewise to serve as a unique identifier, and the value of the Drivewise brand."  (Carpenter Report, Trial Exhibit 63, at 3.)

68. Despite having the means and ability, Allstate has conducted no surveys, consumer reports, or other brand analysis that would measure the effect of Kia's use of Drive Wise on Allstate's reputation or on the reputation of Allstate's Drivewise Program.  (Testimony of Gregory S. Carpenter, ECF No. 2014 63:9-66:4.)  Moreover, the Court was not persuaded that any manufacturer would seriously be interested in incorporating Drivewise into its vehicles.

69. Allstate has met with vehicle manufacturers, including Tesla, about incorporating Drivewise into vehicles without the need for an OBD-II device.  (Purgatorio Testimony, Day I 88:13-89:7.)  While discussions with Tesla failed to result in a partnership, there is no evidence that Tesla's decision was based on Kia's use of the Drive Wise name, or even that Tesla was aware of the mark.  (Purgatorio Testimony, Day II 45:9-46:4.)

70. Allstate is not the first company to use the word "Drivewise."  (Purgatorio Testimony, Day II 26:21-23.)  At least one other company, Temple Beth Israel Deaconess Medical Center ("Beth Israel") uses the mark in connection with its driver rehabilitation program.  (Purgatorio Testimony, Day II 26:4-6.)  Allstate was aware of this use prior to its own use of the Drivewise name.  (Purgatorio Testimony, Day II 28:21-29:8.)  Allstate has not taken legal action against Beth Israel for its use of the Drivewise name.  (Purgatorio Testimony, Day II 29:22-25.)

///

///

///

**CONCLUSIONS OF LAW**


1.  In order to prevail on its claim for trademark infringement, Allstate must show that (a) its Drivewise trademark is a valid, protectable trademark; (b) Allstate owns Drivewise as a trademark; and (c) Kia used Drive Wise without the consent of Allstate in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Kia's goods.  *See* 15 U.S.C. § 1114(1)(a).

**CASE NO.: <u>CV 16-6108 SJO (AGRx)</u>**       **DATE: <u>December 22, 2017</u>**

I.  <u>Allstate Demonstrated that "Drivewise" is a Valid, Protectable Trademark</u>

2.  Allstate's federal trademark registrations for Drivewise (U.S. Trademark Registration Nos. 3,946,209, 5,140,358, and 5,140,359) create a legal presumption that Allstate's Drivewise Mark is valid and enforceable.  15 U.S.C. § 1115.  Allstate's Trademark Registration became uncontestable on April 14, 2016, providing conclusive evidence of the mark's validity.  15 U.S.C. § 1115(b).  Kia does not dispute this element.

II.  <u>Allstate Demonstrated That It Owns "Drivewise" as a Trademark</u>

3.  Allstate's Trademark Registration No. 3,946,209 became uncontestable on April 14, 2016, establishing conclusive evidence of Allstate's ownership of Drivewise.  15 U.S.C. § 1115(b).  Kia does not dispute this element.

III.  <u>Allstate Failed to Carry Its Burden To Prove That Kia's Drive Wise Creates a Likelihood of Confusion</u>

4.  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service earing one of the marks.'" *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)).

5.  In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), the Ninth Circuit developed an eight-factor test "'intended to guide the court in assessing the basic question of likelihood of confusion.'"  *Entrepreneur Media, Inc.*, 279 F.3d at 1140 (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992.)  The factors are: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity or relatedness of the goods or services; (4) the accused's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion of product lines; and (8) the type of goods and the degree of care consumers are likely to exercise.  *Sleekcraft*, 599 F.2d at 348-49, *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003).

6.  This eight factor test "is neither exhaustive nor exclusive."  *E. & J. Gallo Winery*, 967 F.2d at 1290.  Nor does the Court "decide whether confusion is likely by considering mechanically the number of *Sleekcraft* factors that weigh in favor of either party or by giving the same weight to a particular factor from case to case."  *Entrepreneur Media, Inc.*, 279 F.3d at 1141 (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)).  Rather, "it is the totality of facts in a given case that is dispositive."  *Id.* (quoting *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).

    A.  <u>Allstate's Drivewise Mark Is Conceptually Weak and Allstate Has Not Shown That Its Mark Has Acquired Any Market Place Recognition</u>

**CASE NO.: <u>CV 16-6108 SJO (AGRx)</u>**          **DATE: <u>December 22, 2017</u>**

7.   The purpose of examining the strength of the mark is to determine the proper scope of trademark protection to which a mark is entitled. *Entrepreneur Media*, 279 F.3d at 1141. The strength of the senior mark determines the applicable scope of this protection. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 631 n.3 (9th Cir. 2005.)  In cases of reverse infringement, courts must also consider the strength of the junior mark, however it is not relevant to the court's analysis outside of that context. *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 875 (9th Cir. 2014).

8.   The strength of a mark is evaluated both in terms of its conceptual strength and its commercial strength. *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Conceptual strength is determined based on the mark's classification in one of four categories: descriptive, suggestive, arbitrary, or fanciful. *Id.* While the first category must acquire distinctiveness through acquisition of secondary meaning, the final three are considered "inherently distinctive." *Sleekcraft*, 599 F.2d at 349.  Commercial strength looks at the strength of the mark in the marketplace. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009).

9.   On the conceptual strength spectrum, the parties have stipulated that Drivewise is a suggestive mark.  A suggestive mark is inherently weak, but is nonetheless entitled to trademark protection without a showing of secondary meaning. *Sleekcraft*, 599 F.2d at 349 ("Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning.")

10. "Although a suggestive [] mark. . . is inherently a weak mark, it 'may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition, and uniqueness.;" *American Intern. Group, Inc. v. American Intern. Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (quoting *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989)).  "Commercial strength is based on actual marketplace recognition, and thus advertising expenditures can transform a suggestive mark into a strong mark." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.2d 1137, 1149 (9th Cir. 2011) (citations and quotations omitted).

11. Extensive advertising alone, however, is not sufficient to render a suggestive mark strong. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). Advertising expense is simply an imperfect proxy measurement for whether the mark is "remembered and associated in the public mind with the mark's owner." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F.Supp.2d 1023,1047 (C.D. Cal. 2013.)  Here, Allstate failed to demonstrate that its Drivewise mark enjoys market place recognition.  Allstate offered no expert testimony and conducted no consumer research or survey regarding the strength of the Drivewise mark.  Instead, Allstate relied on the amount of money—$400 million—it claims it has spent developing and operating the Drivewise Program and the $47 million spent on

advertising.  Allstate's testimony concerning development and operation expenditures, proffered without supporting documentation, does not persuade the Court.

12. Although Allstate's trademark registrations are incontestable, this merely establishes the validity of the mark and "does not require a finding that the mark is strong."  *Entrepreneur Media*, 279 F.3d at 1143, n. 3.

13. The commercial strength of Allstate's Drivewise mark is weakened by the use of "Drivewise" by third parties such as Beth Israel.  *One Indus.*, 578 F.3d at 1164 ("When similar marks permeate the marketplace, the strength of the mark decreases.  In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd.")  The third party use established by Kia cannot be said to "permeate" the marketplace, yet nonetheless serves to weaken the exclusive association of the mark with Allstate.  Because the Beth Israel mark and the Allstate mark are used in different fields, however, this fact is given little weight.

14. The Drivewise Mark is further weakened by the seemingly small number of Drivewise users in comparison to the program's scope and Allstate's claimed investment. Allstate claims to have 1.1 million active participants and more than 2 million who have used the services over the course of the past several years.[4]  It nonetheless failed to clearly explain what exactly "participation" entails.  This term could be used to describe users who installed the OBD-II device and logged into the application on a regular basis, or it could describe those who simply requested the device or downloaded the application.

15. The Court concludes that Drivewise is a conceptually weak mark, and that Allstate has failed to present convincing evidence that is has acquired market place recognition.  It is therefore a relatively weak mark and entitled to a narrow scope of protection.

///

### B.  "Drivewise" and "Drive Wise" Are Nearly Identical

16. "Similarity of the marks 'has always been considered a critical question in the likelihood-of-confusion analysis.'"  *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016) (quoting *GoTo.com*, 202 F.3d at 1205).  "Similarity of the marks is tested on three levels: sight, sound, and meaning."  *Sleekcraft*, 599 F.2d at 351 (citing *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 638 (9th Cir. 1963)).  "Each must be considered as they are encountered in the marketplace."  *Id.*  "Although similarity is measured by the marks as

---

[4] Allstate's Drivewise is a nationwide program.  The Court takes judicial notice that there were more than 250 million registered vehicles in the United States in 2013. (U.S. Department of Transportation, Federal Highway Administration, *Highway Statistics*, MV-1 and MV-9.)

**CASE NO.:**  <u>CV 16-6108 SJO (AGRx)</u>          **DATE:**  <u>December 22, 2017</u>

entities, similarities weigh more heavily than differences." *Id.* (citing *Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 40 (D.C. Cir. 1956)).

17. "Drivewise" and "Drive Wise" are pronounced identically.  Because Allstate makes extensive use of its agents and agency employees to sell its Drivewise program, the pronunciation of the mark is particularly important.  *Sleekcraft*, 599 F.2d at 351.

18. The meaning of the two marks is also similar—both intending to evoke a sense of intelligent driving.  While Allstate's mark create a sense of human intelligence and awareness and Kia's emphasizes machine intelligence, the similarities in meaning outweigh the differences.

19. There are obvious visual similarities between the "Drivewise" and "Drive Wise" word marks, both of which feature the same components, "Drive" and "Wise."  The only difference is the inclusion of a space in between the two components and the use of a capitalized "W" in Kia's mark.

20. Courts have found the use of a house mark to tilt the likelihood of confusion scale in either direction.  *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992).  While the use of a house mark may mitigate confusion when the junior user is attempting to co-opt the goodwill associated with the senior user, it may do just the opposite in cases of reverse confusion.  Here, both parties have well-established, highly recognizable house marks, reducing the risk that consumers will mistakenly associate Allstate's Drivewise program with Kia and therefore making reverse confusion unlikely.  For this reason, the use of a house mark is more likely to mitigate confusion than to exacerbate it.

21. Allstate almost exclusively uses its Drivewise Mark in close proximity to either its house mark, or its well established "good hands" mark.  The recent merger of the Drivewise App into the more general Allstate Mobile App further reduces the likelihood that Allstate's Drivewise Mark will be improperly associated with Kia.  This, along with the strength of Allstate's house mark greatly decrease the risk of reverse confusion.

22. Kia ordinarily, although not exclusively, uses "Drive Wise" in close proximity to its house mark.  Because there are numerous instances of Kia using the Drive Wise mark in its advertising material without included Kia, its house mark argument is largely unpersuasive, particularly when, as here, the products are sold, in large part, by word-of-mouth and Kia has limited control over the way in which its dealers describe the Drive Wise product.

23. The respective logos differ substantially more than the word marks.  Allstate's Drivewise appears in a single line with a blue and white color scheme while Kia's mark is split into two separate lines and features a red, white, and gray logo.  Nonetheless, both

differentiate between the two components of the mark, "drive" and "wise"—Allstate through the use of different fonts and Kia through the use of a line break.

24. The Court concludes that the marks are highly similar to one another in sight, sound, and meaning.  This factor favors a likelihood of confusion.

### C.  Allstate's and Kia's Products Are Not Closely Related

25. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638 F.3d at 1150 (citing *Sleekcraft*, 599 F.2d at 350).  "'Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods.'"  *Id.*  (quoting *Brookfield*, 174 F.3d at 1055).

26. "In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."  *Brookfield*, 174 F.3d at 1056.  If, on the other hand, Allstate and Kia do not compete to any extent, the likelihood of confusion would be remote, or at least Allstate would bear the heavy burden of demonstrating that consumers were likely to be confused as to source or affiliation in such circumstances.  *Id.* at 1056.

27. The Ninth Circuit applies a "sliding scale approach as to the weight that relatedness will carry depending upon the strength of the trademark holder's mark.  This approach takes into account the fact that consumers may well recognize that [parties] use[] terms . . . for what the word *means*, not because of an association with [plaintiff's product]."  *Entrepreneur Media*, 279 F.3d at 1148.  Here, Allstate's mark is suggestive and relatively weak.  This, coupled with the fact that both parties independently selected the mark due to its implied meaning indicates that, to the extent the goods or services are related, little weight should be given to this fact.

28. Allstate's offering is primarily a service—monitoring driving performance and offering incentives for safe driving behavior; Kia offers a product—a system of interconnected sensors capable of detecting road hazards and alerting the driver or autonomously correcting the vehicle's trajectory.  *See In re Coors Brewing Co.*, 343 F.3d 1340, 1346 (Fed. Cir. 2003) (finding that beer and restaurant services are not related without a showing of "something more" to establish that consumers are likely to conclude they both emanate from the same source).  While Allstate does provide a physical OBD-II device, the purpose of this hardware is simply to enable its usage-based insurance services.

29. Kia's Drive Wise product consists primarily of a system of sensors placed around the vehicle to detect and analyze road conditions in realtime.  (Tjoa Testimony 47:20-51:11.) Allstate's system does not itself contain any sensors, but rather makes use of a car's existing OBD-II port to tap into the accelerometer built into modern vehicles and provide information to

**CASE NO.: CV 16-6108 SJO (AGRx)**      **DATE:** December 22, 2017

drivers. (Purgatorio Testimony, Day I 70:16-22.) Allstate's Drivewise Program is therefore primarily passive, collecting data without actively controlling the vehicle. (Purgatorio Testimony, Day II 34:20-35:10.) Kia's system has several features that exert active control over the vehicle. (Tjoa Testimony 47:20-51:11.)

30. Allstate's Drivewise Program, while not itself an insurance plan, is a complement to Allstate's insurance products and enables usage-based insurance. It is largely comparable to the usage-based insurance plans and devices offered by other insurers. (Jillson Testimony 86:4-87:13.)

31. Allstate's Drivewise Program does not provide any of the features currently available under Kia's Drive Wise sub-brand. (Purgatorio Testimony, Day II 32:3-15.) Similarly, none of the features currently offered by Allstate's program are provided by Kia's Drive Wise product. (Tjoa Testimony 51:22-53:15.)

32. Allstate's Drivewise Program is free of cost, while Kia's system costs several thousand dollars and requires the purchase of a vehicle. The stark difference in price between the two products greatly reduces the likelihood that consumers will view the two as related to one another or emanating from the same source. *See S & B Filters Inc. v. R2C Performance Products, LLC*, No. 16-cv-1069-JFW (MRWx), 2016 WL 8928314, at *11 (C.D.Cal. Aug. 18, 2016) ("Differences in price between the two products should also be considered in measuring product proximity") (quoting *Banfi Products Corp. v. Kendall-Jackson Winery, Ltd.*, 74 F.Supp.2d 188, 197 (E.D.N.Y 1999)).

33. While in no way limiting the scope of Plaintiff's rights[5], the fact that the parties' trademarks are not registered in the same International Class provides insight into the parties' intentions at the time the trademarks were registered. Allstate's mark is registered in four classes, 9, 35, 36, and 42. (Stipulation of Facts, Nos. 10,12,13,15.) In broad terms, these classes cover insurance, advertising, technological services, research, and software. (RJN, Exh. 3.) Kia has applied for its mark to be registered solely in International Class 12 covering automobiles. (Stipulation of Facts, No. 31.) As previously mentioned, on September 27, 2017, the United States Patent and Trademark Office issues a "Notice of Publication." (Stipulation of Facts, No. 29.) The Notice of Publication states that the mark appears to be entitled to registration. Although the USPTO's determination is preliminary and entitled to little weight, it nonetheless suggests that the Examiner found Kia's Drive Wise mark could be trademarked. *See Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.3d 794, 802 (9th Cir. 1970).

34. Allstate insinuates that its service is related to Kia's product because they both rely on software. (Choi Testimony 29:14-21.) This argument is unavailing because it is extremely

---

[5] The classification of foods and services is for the convenience of the Patent Office administration only and does define the scope of the applicant's rights. 15 U.S.C. § 1112; *see also In re Knapp-Monarch Co.*, 296 F.2d 230, 231 (C.C.P.A. 1961).

**CASE NO.:**  <u>CV 16-6108 SJO (AGRx)</u>          **DATE:**  <u>December 22, 2017</u>

broad.  Software is pervasive in modern society and finding that products are related simply because they both make use of software would drastically expand the scope of trademark rights.  "When two products or services fall within the same general field, it does not mean that the two products or services are sufficiently similar to create a likelihood of confusion."  *Echo Drain v. Newsted*, 307 F.Supp.2d 1116, 1125 (C.D. Cal. 2003) (quoting *Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.*, 952 F.Supp. 1084, 1095 (D.N.J. 1997)).  For the same reason, the fact that both are in some way related to improving driver safety is insufficient to establish relatedness.

35. For all these reasons and because Allstate offered no expert testimony or survey evidence demonstrating that the consuming public is likely to associate Allstate's Drivewise mark with Kia's mark, the Court concludes that Allstate has failed to meet its burden showing the products are closely related.  This factor therefore weighs against a likelihood of confusion.

D.  <u>Kia Had Knowledge of Allstate's Mark, However, There Is No Evidence That It</u>
    <u>Intended to Confuse the Public or Derive Goodwill</u>

36. "The law has long been established that if an infringer 'adopts his designation with the intent of deriving benefit from the reputation of the trade-mark or trade name, its intent may be sufficient to justify the inference that there are confusing similarities.'"  *Brookfield*, 174 F.3d at 1059 (quoting *Pacific Telesis v. International Telesis Comms.*, 994 F.2d 1364, 1369 (9th Cir. 1993)).  "[I]ntent to deceive is strong evidence of a likelihood of confusion" because, "the alleged infringer's judgement as to what is likely to be confusing is relevant because it may well be accurate."  *Entrepreneur Media*, 279 F.3d at 1148.

37. "Adopting a designation with knowledge of its trademark status permits a presumption of intent to deceive."  *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999).  However, the intent "factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)."  *Brookfield*, 174 F.3d 1059.

38. There is no dispute that Kia was fully aware of Allstate's trademark registration and use at the time it adopted the "Drive Wise" name.  Here, however, there is no need for the Court to presume or infer as to Kia's intent in selecting the mark.  Kia independently derived the name, initially unaware that Allstate used the mark, and its legal team performed a trademark search.  While Kia was fully aware of Allstate's mark, it believed that there would be no consumer confusion because Allstate was an insurance company and its mark was not registered in International Class 12.  This is a reasonable conclusion—indeed, the USPTO examiner also preliminarily believed Kia's mark could be trademarked.  (*See* Stipulation of Facts No. 29.)

**CASE NO.: <u>CV 16-6108 SJO (AGRx)</u>**        **DATE: <u>December 22, 2017</u>**

39. Because Allstate has not shown that Kia intended to confuse the public or to derive goodwill from Allstate's use of the Drivewise name, the Court finds that this factor is neutral. *See Brookfield*, 174 F.3d at 1059 ("[T]he lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source.") (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 287 (6th Cir. 1997)).

> E. There Is No Evidence of Actual Confusion And Allstate Has Not Offered Other Evidence Suggesting Likelihood of Confusion

40. "'[A] showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion.'" *Network Automation*, 638 F.3d at 1151 (quoting *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004)). "However, 'actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act.'" *Id.* (quoting *Acad. of Motion Picture Arts & Sci. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991)). "Indeed, '[p]roving actual confusion is difficult . . . and the courts have often discounted such evidence because it was unclear or insubstantial.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 352).

41. "The Ninth Circuit has held that 'lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.'" *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1093 (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002)). Here, the two marks have coexisted for approximately one and a half years—ordinarily a relatively short period of time. However this case differs from other matters because of the unique opportunity presented by the 27 Kia dealerships with Allstate agent office onsite.

42. Neither party has presented any evidence regarding actual confusion at trial. While "[s]urvey evidence is not required to establish likelihood of confusion, [] it is often the most persuasive evidence." *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1041 (C.D. Cal. 1998). When a plaintiff fails to perform a survey despite having ample opportunity and resources to do so, the Court may infer that the survey's results would be unfavorable. *See Cairns*, 24 F.Supp.2d at 1041; *Monster, Inc. v. Dolby Laboratories Licensing Corp*, 920 F.Supp.2d 1066, 1072 (N.D. Cal. 2013) ("[A] trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it.")

43. The Court is concerned with Allstate's failure to provide any evidence regarding actual confusion, likelihood of confusion, market place recognition, or other survey results. While the marks have co-existed for a relatively short period of time, they have nonetheless existed together for more than a year in what amounts to an ideal laboratory: the 27 Kia dealerships which also house Allstate agent offices. Notwithstanding the marks simultaneous

**CASE NO.: <u>CV 16-6108 SJO (AGRx)</u>**          **DATE: <u>December 22, 2017</u>**

use in close proximity with one another, Allstate has failed to present any evidence of confusion.

44. Because Plaintiff has failed to provide any evidence of actual confusion or a likelihood of confusion despite having both the means and ability to do so, the Court infers that no such confusion can currently be demonstrated.   Accordingly, this factor weighs against a likelihood of confusion.

> F.  <u>There is Limited Overlap Between the Marketing Channels Used by Kia and Allstate</u>

45. "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 535.  When examining the marketing channels used by the two companies, courts consider "where the goods or services are sold, the sales and marketing methods employees, and the class of purchasers exposed to the marketing efforts." *La Quinta*, 762 F.3d at 876-77.

46. At this time, the only marketing channels used by Kia for its Drive Wise product are the kia.com website and brochures distributed at Kia dealerships.  Allstate promotes its Drivewise Program using national and regional television ads, online ads and banners, postcards, laminates, and posters, as well as through its agents and licensed sales producers.

47. The mere fact that both parties market their products using the internet "does not alone and as a matter of law constitute overlapping marketing channels." *Entrepreneur Media*, 279 F.3d at 1151.  As Allstate has not shown that consumers are likely to encounter both parties' marketing materials on the same webpage, or at least the same domain, the fact that both use online advertising is given little weight.

48. The only substantial marketing channel overlap between the two is the 27 Kia dealerships in the United States where Allstate maintains agent offices.  In these dealerships, a consumer might encounter both Kia Drive Wise brochures and advertising materials for Allstate's Drivewise program.

49. Because of the extremely limited overlap between the marketing channels used by Allstate and Kia, this factor weighs slightly in favor of consumer confusion.

> G.  <u>There is Little Risk of Future Product Line Expansions Resulting in Direct Competition</u>

50. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (citing Restatement of Torts § § 731(b) & Comment c).

**CASE NO.:** CV 16-6108 SJO (AGRx)     **DATE:** December 22, 2017

51. None of the future expansions for which Allstate has shown sufficiently concrete plans are closely related to the functionality provided by Kia's Drive Wise system. ███

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████

52. While it is true that features associated with Kia's Drive Wise mark are not set in stone and are likely to change as the available technology changes, "mere speculation is not evidence" and there must be "concrete evidence of expansion plans." *Surfvivor*, 406 F.3d at 634. Allstate has not established that Kia has any concrete plans to expand its product line to directly compete with Allstate's Drivewise Program.

53. The Court finds that this factor weighs against a likelihood of confusion.

### H.   Consumers Purchasing Kia's Product are Likely to Exercise Significant Care

54. "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353 (citing *HMH Publishing Co. v. Lambert*, 482 F.2d 595, 599 n.6 (9th Cir. 1973)). "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id.* (citing *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)).

55. Automobiles are ordinarily one of the largest purchases made by individual consumers and they are therefore likely to exercise great care when purchasing one. While Kia's Drive Wise system is not itself a car, it can only be purchased in conjunction with a vehicle and cannot be added as an after-market product. The add-on itself is also a significant cost for most consumers, ranging from $1,000 to $3,000 depending on the Drive Wise features selected.

56. While the Court agrees with Defendants that insurance coverage is a large, infrequent purchase likely to be carefully considered by consumers, Allstate's Drivewise Program is free and open to all consumers, regardless of whether they hold an Allstate policy. Consumers are therefore less likely to closely scrutinize the Drivewise Program before downloading the app and enrolling. Nonetheless, the fact that nearly half of all participants in the program have discontinued their use of the program suggests that consumers do not participate blindly.

57. The Court finds that this factor weighs against a likelihood of confusion.

---

[6] ████████████████████████████████████████████████
████████████████████████████████████████████████

**CASE NO.:** <u>CV 16-6108 SJO (AGRx)</u>        **DATE:** <u>December 22, 2017</u>

I.  <u>Totality of the *Sleekcraft* Factors</u>

58. Considering all of the factors together, Allstate has failed to meet its burden to show that Kia's use of the Drive Wise sub-brand is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of its goods.

**<u>Conclusion</u>**

For the foregoing reasons, the Court finds in favor of Kia Motors America, Inc. and Kia Motors Corporation and against Allstate Insurance Company.  Plaintiff's request for a permanent injunction is DENIED.

IT IS SO ORDERED.